[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
Before the Court for decision is Draper Avenue Trust and Alfredo Dosanjos' (Defendants) motion for summary judgment with respect to Richard Conti's (Conti) claims for intentional interference with contractual relations and negligent interference with contractual relations. Also before the Court is Conti's cross motion for summary judgment on the Defendants' claims of intentional intereference with contractual relations and abuse of process. This Court's jurisdiction is pursuant to G.L. 1956 § 8-2-14.
 Facts and Travel
The facts before the Court are undisputed. In the spring of 2001, Rosiland Newton (Newton), a real estate broker, informed Alfredo DosAnjos (DosAnjos), the trustee of the Draper Avenue Realty Trust (Draper), that the Rhode Island Economic Development Corporation (RIEDC) was accepting bids for a parcel of real estate (the Property) located at the intersection of Route 7 and Route 116 in Smithfield, Rhode Island. The term sheet provided by RIEDC to all parties interested in the Property provided, interalia, that the property was offered for $600,000. On April 16, 2001, Draper made a written offer to RIEDC to purchase the property for $650,000 and placed $100,000 in escrow to bind the offer.
Allegedly, Conti entered into an agreement with RIEDC to buy the Property on April 17, 2001. On April 23, 2001, the RIEDC Board of Directors (Board) passed a resolution to authorize and ratify any agreement entered into by its agent for the conveyance of the Property to Conti in return for $600,000 and the settlement of unrelated legal claims against RIEDC. Despite the Board's resolution, RIEDC continued to solicit and receive offers and bids for the Property.
On April 27, 2001, RIEDC's executive counsel, Adrienne Southgate (Southgate) mailed a memorandum to Newton, Conti, and another party who had expressed interest in the Property, outlining a specific bidding protocol. All "last best offers" were due by close of business on May 3, 2001. Draper submitted its bid on May 3, 2001, increasing its offer to $766,000. On May 8, 2001, Southgate informed Newton that Draper's offer was the "last and best offer" and that she would be seeking authority from the Board to conclude the sale to Draper. On May 10, 2001, Conti initiated this civil action claiming anticipatory breach of contract against RIEDC, and intentional interference with contract and negligent interference with contract against Newton, Draper, and DosAnjos.
 Summary Judgment Standard
The Rhode Island Supreme Court has articulated the standard that a motion justice must employ in ruling on a summary judgment motion. "Summary judgment is a proceeding in which the proponent must demonstrate by affidavits, depositions, pleadings and other documentary matter . . . that he or she is entitled to judgment as a matter of law and that there are no genuine issues of material fact." Palmisciano v. Burrillville Racing Association,603 A.2d 317, 320 (R.I. 1992) (citing Steinberg v. State,427 A.2d 338 (R.I. 1981); Ludwig v. Kowal, 419 A.2d 297 (R.I. 1980)); Super. Ct. R. Civ. P. 56(c). When the moving party sustains its burden, "[t]he opposing parties will not be allowed to rely upon mere allegations or denials in their pleadings. Rather, by affidavits or otherwise, they have an affirmative duty to set forth specific facts showing that there is a genuine issue of material fact." Bourg v. Bristol Boat Co., 705 A.2d 969
(R.I. 1998) (citing St. Paul Fire and Marine Insurance Co. v.Russo Brothers, Inc., 641 A.2d 1297, 1299 (R.I. 1994)). During a summary judgment proceeding, "the court does not pass upon the weight or credibility of the evidence but must consider the affidavits and other pleadings in a light most favorable to the party opposing the motion." Palmisciano, 603 A.2d at 320
(citations omitted).
 Negligent Interference with Contractual Relations
The fifth count in Conti's verified complaint alleges that the Defendants knew of the alleged contract between Conti and RIEDC and negligently interfered with said contract. The Defendants argue that as a matter of law they are entitled to summary judgment on this claim because Rhode Island does not recognize a cause of action for this tort. Conti does not rebut the Defendants' argument either by citing a Rhode Island case recognizing this cause of action, or arguing for its adoption based on case law from other states. In fact, neither Conti's memorandum nor oral argument addresses this legal question. The Court is satisfied that, in keeping with the general rule, negligent interference with contract is not a recognized cause of action in this jurisdiction. See Prosser and Keeton on Torts,
§ 129 at 982 (W. Page Keeton 5th ed. 1984) (the general rule is that negligent interference is not actionable). Therefore, Conti's claim must fail as a matter of law.
Even assuming that Conti could bring a cause of action for negligent interference with contract, summary judgment for the Defendants would still be appropriate because the Defendants owed no duty to Conti. It is black letter law that "only when an individual owes a duty to another and has breached that duty can that individual be held liable for negligence."Hydro-Manufacturing, Inc. v. Kayser-Roth Corp., 640 A.2d 950
(R.I. 1994). Whether such a duty exists is a question of law for the court. Id. Here, the Court would have to find that a bidder on a piece of property owes a duty of care to a competing bidder. The Court is unaware of any authority imposing a duty in this situation. Consequently, summary judgment may enter for the Defendants on this claim.
 Direct Motion for Summary Judgment: Intentional Interference with Contract
The Defendants move for summary judgment on Conti's claim of intentional interference with contractual relations. To succeed on his claim, Conti must prove (1) the existence of a contract; (2) the wrongdoer's knowledge of the contract; (3) an intentional act of interference; and (4) damages to the plaintiff. Mills v.C.H.I.L.D., Inc., 837 A.2d 714, 721 (R.I. 2003). The Defendants argue that Conti has failed to establish a prima facie claim for intentional interference with contracts because the Defendants could not have known of the alleged contract and they could not have acted with malicious intent.
The Defendants argued for summary judgment assuming that there was a contract between Conti and RIEDC, but they raise the issue, albeit in a footnote, that no contract was ever formed. Conti does not present any affirmative evidence that would support a finding to the contrary. Although an action of the Board may create a binding contract, a contract does not arise as a matter of law. Indeed, all the elements of contract formation must be present. See, e.g. Fobian Farms v. Gateway Coop., 2002 Iowa App. LEXIS 11 (Iowa Ct. App., 2002) (minutes of board, although containing all material terms, did not specifically express intent to be the completion of an agreement and so was not an express contract for purposes of statute of limitations);Crawford v. City of Pocahontas, 1985 Ark. App. LEXIS 1731 (Ark.Ct.App., 1985) (even though the minutes of a council meeting might be sufficient to constitute a written contract, the minutes at issue lacked essential terms and did not constitute a written contract). Here, the resolution of the Board, which is the only evidence of a contract before the Court, reflects the Board's intent to convey the Property to Conti. However, the minutes clearly contemplate that a purchase and sale agreement would be executed at a later time:
 "Voted: That the Rhode Island Economic Development Corporation (the Corporation) is hereby authorized, directed and empowered to settle that certain condemnation valuation litigation currently pending between the Corporation and Richard Conti . . . and, thereafter to convey to Richard Conti or his assign that certain real property of the Corporation located at the corner of Route 7 ad Route 116 in Smithfield, Rhode Island (the Property) for the appraised value purchase price of $600,000 pursuant to any and all agreements, contracts, settlement documents, resolutions and dismissal stipulations as authorized executed and delivered by the Chairman, Executive Director or Chief Operating Officer. . . ." (Emphasis added.)
Furthermore, the minutes are not signed by a member of the Board, its agent or by Conti. Indeed, the minutes are not signed at all. G.L. 1956 § 9-1-4 (contract for sale of realty "shall be in writing and signed by the party to be charged therewith"). Nevertheless, contract formation is normally a question of fact, and the Court questions whether a third person, not a party to the contract, may raise the Statute of Frauds as a defense.Crellin Technologies v. Equipmentlease Corp., 18 F.3d 1, 7
(1st Cir. 1994) (contract formation is properly a question fact to be determined by the fact finder); see Ardente v.Horan, 117 R.I. 254, 366 A.2d 162 (1976) (where a party makes no claim to the benefit of the statute of frauds, the court sua sponte will not interpose it for him); Browning v. Parker,17 R.I. 183, 20 A. 835 (1890) (when one charged upon an oral contract confesses it, and is willing to abide by its terms, no other person has the right to object). Therefore, the Court will assume that a contract exists.
To satisfy the knowledge requirement, Conti need not prove that the Defendants had concrete knowledge. DiBiasio v. Bown SharpeManufacturing, Co., 525 A.2d 489, 493 (R.I. 1987). Rather, the Defendants only need to have "knowledge of facts that would lead a reasonable person to believe that such a contractual relationship exists." Id. The Defendants argue that they could not have known of Conti's contract with RIEDC because Conti's contract did not arise until after the Defendants had communicated their first offer. According to Conti's First Amended Complaint, he entered into an agreement with RIEDC to purchase the Property on April 17, 2001. The Defendants submitted their initial offer on April 16, 2001. In further support, the Defendants include the deposition testimony of Newton, who stated that at the time she submitted the bid for the Defendants, she did not know who else was bidding on the property. Also included as part of the Defendant's motion is the deposition transcript of DosAnjos, who testified that he did not have contact with RIEDC concerning the Property; he did not know about RIEDC's resolution; and that although at some point he learned that Conti was bidding on the Property, he could not remember exactly when or how he learned that information.
In response to the Defendants' argument, Conti does not offer opposing affidavits or other proof of the Defendants' knowledge. No evidence was presented to explain how the Defendants could know about a contract before it came into existence. Rather, at oral argument, Conti pointed out that since DosAnjos could not remember precisely when he learned that Conti was a bidder, this created a question of material fact for the jury. Viewing the facts in a light most favorable to Conti, no reasonable person in the Defendants' position would believe that a contractual relationship existed between Conti and RIEDC. RIEDC invited the Defendants to bid on the Property well after the Board had made its resolution to sell the Property to Conti. The reasonable inference would be that the Property had not yet been sold. The names of the other bidders were not disclosed, and the Defendants testified that they did not have actual knowledge of Conti's bid. The Court cannot see how Conti's oral arguments amount to more than the mere allegations in his pleading that the Defendants knew of a contract. Conti has the affirmative duty to set forth by affidavit, or otherwise, specific facts that create a dispute of material fact. Mills v. C.H.I.L.D., Inc., 837 A.2d 714, 719
(R.I. 2003). Because he has not done so, he has failed to establish a prima facie claim for intentional interference with contract.
In order to prevail on his claim, Conti must also prove that the Defendants intended to do harm without justification.Mesolella v. Providence, 508 A.2d 661, 669-70 (R.I. 1986). Intent is normally a question of fact. Thompson Trading, Ltd. v.Allied Breweries Overseas Trading, Ltd., 748 F. Supp. 936, 944
(D.R.I. 1990) (genuine issue of fact existed as to whether the defendants shared benign intentions or harbored an intent to harm plaintiff). However, Conti submits no affirmative evidence that creates a genuine issue of material fact. The evidence as it stands indicates the Defendants did nothing that distinguishes them from anyone else who bid on the property at RIEDC's request. The Defendants were simply the winning bidders. Given the chronology of events, the Defendants' lack of knowledge, and an absence of evidence to the contrary; the Court is satisfied that Conti has not proved the third prong of an intentional interference with contract claim. See Prosser and Keeton onTorts, § 129 at 982 (without knowledge of the contract, there can be no intent and no liability).
 Cross Motion for Summary Judgment: Intentional Interference with Contract
Conti's cross motion for summary judgment on the Defendants' intentional interference with contract claim argues that no contract existed between the Defendants and RIEDC when Conti filed his suit, and even if there were a contract, Conti's actions were justified. Conti is correct that the Defendants have not clearly proved that they had a contract with RIEDC. Indeed, it is clear from the written communications between Southgate and Newton that although the Defendants had the winning bid, certain issues still had to be resolved. For example, there was an outstanding right of first refusal which had to be settled, and there were negotiations between Southgate and the Defendants to waive certain conditions. Nevertheless, the Court does not believe that the lack of a final agreement is fatal to the Defendants' claim because their counterclaim complaint alleges facts that would support a claim of intentional interference withprospective contractual relations. Mesolella,508 A.2d at 669-70. Specifically, paragraph 15 alleges that "Conti was aware of the prospective contractual relationship between RIEDC and Draper." The Defendants posit that the current litigation is proof that Conti knew of the prospective contract between the Defendants and RIEDC and intended to interfere with it. Conti does not debate this assertion. Rather, he asserts that his actions were justified.
Once the aggrieved party has put forth a prima facie claim for intentional interference, the burden shifts to the accused party to prove that his actions were justified. Belliveau BuildingCorp. v. O'Coin, 763 A.2d 622, 627 (R.I. 2000). Conti's argument that his actions were justified raises a significant issue, i.e., whether Conti was justified in suing the Defendants for intentional interference with contract in order to preserve his contractual rights vis a vis RIEDC. There is no bright line test for justification; however there is authority for the proposition that the protection of one's contract rights may justify actions that interfere with a third party's contract.See Prosser and Keeton, § 129 at 983-84. For example, inTidal Western Oil Corp. v. Shackelford, 297 S.W. 279 (1927), the Texas Court of Appeals held that a grantor could not recover in tort where an assignee of oil rights wrote a letter to inform a subsequent assignee of its prior rights to the oil. Likewise, in Quinlivan v. Brown Oil Co., 29 P2d 374 (1934), the Montana Supreme Court held that a lessor was justified in coercing its lessee to break a contract with a third party because the lessee's contract with the third party violated a term in the lease agreement between the lessor and the lessee.
However, the analysis does not end here. "Even where the defendant asserts that it was merely exercising its own contractual rights, [his] actions, if found to be unreasonable, can constitute improper interference with the plaintiff's contractual relationship." New England Multi Unit-HousingLaundry Assoc. v. Rhode Island Housing Mortgage and FinanceCorp., 893 F.Supp. 1180, 1192 (D.R.I. 1995). Such is the case when interference is achieved through meritless or bad faith litigation. CNC Chemical Corp. v. Pennwalt Corp.,690 F.Supp. 139, 143 (D.R.I. 1988).
Rhode Island follows the Restatement method for determining whether an act of interference was improper. Belliveau,763 A.2d at 629. Whether Conti acted improperly is a question of fact regarding which a number of factors are weighed, including but not limited to
 (1) the nature of the actor's conduct; (2) the actor's motive; (3) the contractual interest with which the conduct interferes; (4) the interests sought to be advanced by the actor; (5) the balance of social interests in protecting freedom of action of the actor and the contractual freedom of the putative plaintiff; (6) the proximity of the actor's conduct to the interference complained of; and (7) the parties' relationship. Restatement (Second) Torts § 767, at 26-27 (1979).
Because disputed issues of fact exist regarding whether Conti was justified in interfering with the Defendants' contractual or prospective relationship, summary judgment is inappropriate at this juncture.
 Abuse of Process
The final issue before the Court is whether summary judgment should be granted for Conti on the Defendants' abuse of process claim. This tort requires proof (1) that Conti instituted proceedings or process against the Defendant; and (2) that Conti used the proceedings to obtain an ulterior or wrongful purpose for which the proceedings were not designed. As an initial proposition, the fact that Conti sued RIEDC for breach of contract does not preclude Conti from suing the Defendants for intentional interference with contract. Montana Educ. Ass'n,187 Mont. 419, 423 (Mont. 1980). "In terms of legal theory, it is therefore possible to bring suit for breach of contract and also to bring suit for the tort of inducing breach of contract." Id.
According to Conti, he had "every right to institute the within lawsuit to seek to hold RIEDC to its word." But it is unclear how suing the Defendants would accomplish this goal. Specifically, it is unclear how, by bidding on the Property, the Defendants caused RIEDC to renege on its agreement with Conti. In fact, Conti, relying on the deposition testimony of Southgate, admits that "clearly Mr. Conti's agreement with RIEDC, consummated by the April 23, 2001 resolution, was thwarted by someone in a position of authority over Ms. Southgate." There is no evidence that the Defendants were involved in any way with the internal decision making at RIEDC.
Without deciding the matter, it is important to note that there is no evidence that the Defendants knew that Conti had prior business expectancies with RIEDC. Furthermore, as mentioned above, there is nothing particular about the Defendants' actions distinguishable from any other bidder's actions. These factors show that the Defendants have a prima facie case for abuse of process. Whether Conti actually acted in bad faith is for the fact finder to decide; therefore, summary judgment is denied.See Pound Hill Corporation, Inc. v. Jacob Perl et al.,668 A.2d 1260, 1264 (1996) (after discussing the applicability of the Noerr-Pennington doctrine to abuse of process suits, the Supreme Court held that genuine issues of fact existed concerning whether certain actions taken by defendants were objectively baseless and utilized the process itself rather than the intended outcome in order to hinder and delay plaintiff in its attempt to develop the subject real estate).
 Conclusion
For the above reasons, this Court grants the Defendants' motion for summary judgment on the negligent interference with contractual relations and intentional interference with contractual relations claims. Conti's cross-motion for summary judgment regarding the Defendants' intentional interference with contractual relations claims is denied because there are disputed issues of material fact that must be resolved by the fact finder. Similarly, disputed issues of fact preclude granting summary judgment on the Defendants' abuse of process claim. Counsel shall submit an appropriate order consistent with this decision.